the Senate should be vacated. Can I ask you a question about that though? Because just with respect to the sentence and not with respect to the restitution, it seems like Judge Martinez said that he would have imposed the same sentence regardless. And when you go back and you look at his reasoning and his explanation for that, it seems as though there's enough there for us to need to defer to that determination. Is there something that I'm missing? Is there some reason why Judge Martinez's statement that he would have applied the same sentence even if he had the valuation wrong is something that we shouldn't consider? A couple of points on that, Your Honor. First, Judge Martinez said that almost in passing that the government's prompting. And he gave only one reason for it. He said, I would have given the same sentence because it was a priceless work of art. Well, he had kind of expounded upon that earlier in the sentencing though. I mean, he had spoken for a while about, you know, you can't get another one of these. This is a museum. All these people came through. And so, it seemed as though that was sort of a shorthand way of referring to his earlier discussion about why it was a priceless item. Certainly true, Your Honor. In the co-defendant's sentencing, he spoke at length at some point during the witness's testimony and at some point when imposing sentence. So that's absolutely true, Your Honor. Depending on how he applied the loss guideline, the valuation, it would be a variance. Correct, Your Honor. If he was wrong on the valuation, then it would be a variance and you got to make some explanation for the variance. Absolutely, Your Honor. It would have been an upward variance. It would have been an upward variance. 33 months would have been the high end with the lower valuation. And the judge, the only explanation, and this gets to the second point, I think it will address both of these questions. It would have been an upward variance from the 33-month high end of the lower guideline if the lower valuation had been accepted. And he didn't explain it adequately enough. The priceless work of art comment he made in Mr. Goldman's sentencing was shorthand for what he said earlier in Mr. Johnson's sentencing, but it all stemmed from the same thing. And it's that this was a priceless object that was unique in a museum, and the damage to society from stealing it is why he would have imposed the sentence. Now, the second prong of the keen test, he announced that he would have imposed the same sentence. That's the first prong. The second prong is, would the sentence still have been reasonable? Substantively reasonable. And here's why it wouldn't. And it gets to your point, Judge Schoflatt. It's an upward variance from the guidelines when the sentencing commission already explicitly contemplated this type of a crime and created the guidelines for it. So 2B.1.5, the theft of a cultural heritage resource guideline, which we're operating under here, has a higher base offense level, 8 versus 6 on the general theft guideline in 2B.1. And in addition... Even though it's already a consideration, we've said previously that a judge is allowed to put extra emphasis on something already considered by the guidelines, haven't we? Yes. But I think it just goes to the substantive unreasonableness of what he did. The only reason he articulated was this priceless stolen from a museum. There's a higher base offense level in the guideline already. Mr. Goldman received a two-level enhancement as well because it was stolen from a museum. Another factor explicitly put into the sentencing guidelines by the sentencing commission. And he got another enhancement for stealing it for pecuniary gain. And that, as the sentencing commission explained, it's more culpable when someone steals an artifact for pecuniary gain rather than just for their own personal enjoyment. So we have additional six levels already built into what the guidelines should have been in this case had the bar been properly valued. And, exactly, we have an upward variance from that. The only reason given for it was a reason that was already accounted for in the guidelines. And I think that that makes... Correct? Correct, Your Honor. Okay. Correct. And all that being said, with respect to restitution... Don't you think he considered the fact they'd had it 30 years and all these people had come? This is not like a big museum. This was a hugely important artifact there, a cultural heritage. All these people had come and touched it and so forth. Correct, Your Honor. Don't you think he considered all of that? He did, Your Honor. And he mentioned that in the record and the government argued that, absolutely. I think you need to address restitution because I think you've got, in my view, a better argument on restitution. Yes, Your Honor. So the Keene finding that Judge Martinez would have made the same finding regardless of the guidelines calculation, as you noted, could not apply to restitution where the court has an obligation to make a reasonable estimate of the victim's losses. And here, the court's estimate of the victim's losses was based upon really almost nothing in the record other than a witness, and this applies to the guidelines, but as well to restitution. A witness who had no first-hand knowledge of any type of valuation methodology basically just made a phone call to someone in Mel Fisher's investor folks division. I'm going to ask his question so the government can respond. I want to see if somebody asked her where you went to school, what did you ever praise things before? There's like no background of this witness at all. Is that correct? Absolutely, Your Honor. I mean, nothing. And she says it in the record. What her prior jobs were. She says she's been here as executive director seven years, but it doesn't say anything. Absolutely, Your Honor. Is that correct? There's no qualifications whatsoever other than I've been a director of this museum. She doesn't talk about as director I bought anything, sold anything. So you're just saying there's a lack of evidence. Is there a remedy that you got to go back and they then need to prove, they failed to prove it, so they got to go back and have another hearing on rest, evidence you're hearing on restitution. Is that your position? Absolutely, and on the guidelines. Thank you, you've answered my question. Yes, and further to your question, not only is there a lack of any evidence of any kind of appraisal experience or even business experience on behalf of the government's sole witness here. She was the executive director, and when asked she was cross-examined, and she said, that's not what we do. I'm never going to agree that the bar was worth this. That's not my makeup. That is not my professional background. That is not my point of view. So in fact, there's evidence suggesting that she had absolutely no idea how to appraise this, and in fact, her testimony she initially testified on direct examination that the insurance company had only offered them the melt value of the bar, which is not correct. When she was confronted with the insurance company's appraisal that they had done, which said that the bar was worth $101,000 versus $556,000, literally. I looked to see if the exhibit of the appraisal and the insurance company was in the record. It looked like it was an exhibit, and it was admitted, but I couldn't find the exhibit in the record, and the clerk's office told me it was returned to counsel. Did you find it in this record? Yes, I did, Your Honor. Tell me where it is. It's attachment 3. It's document 86-3. It's an attachment to the co-defendant Johnson. 86-3, document what? Document 86, attachment 3, and also, what is definitely in the record are the charts. So that was in the co-defendant, maybe that's why I couldn't find it. Okay. But also, Your Honor, it's actually the charts that are used, the actual valuation charts with fair market value comparisons in the government's brief. The pre-sentence investigation report doesn't give any indication, whatever, as to where that valuation number came from. Absolutely, Your Honor. I suspected it came from just the government or somebody, I don't know. All we know. All we know in the record, and for the record... This is just a naked number. Yes. Pages 18 and 19, I believe, of the government's insurance company valuations numbers. I know, but I wanted to look back at the report and see what the insurance company said to look at that. I just couldn't find it, but you've answered the question. Thank you, Your Honor. And yes, that is absolutely right. The only evidence is a witness who had nothing to do with the valuation. She says that the investment division of Mel Fisher told her what it was worth, told her about this point system. Is your client out of jail already? No, he's not, Your Honor. He's currently incarcerated. And when is his release date? I'm just curious. I believe it's in about two more years. Oh, two more years. Okay. So he must not have gone... Yeah, all right. Thank you. Yes, Your Honor. That's right. I think this was expedited because of the short sentence. Yes. Okay. Let's just say it's a rebuttal time. I'll... The red light's on. Yes, I see. I see that my time is up. I will cede the podium to my colleague. Thank you. Mr. Marcet. Good morning, Your Honors. May it please the Court. Daniel Marcet on behalf of the United States with me at council table. This is Trial Code Counsel Monique Botero. I will start with answering Judge Hall's question that she posed to both counsel. Melissa Kendrick's qualifications, I don't believe they were not talked about but the sentencing hearing... I've got the transcript right here and I find nothing whatsoever. Correct. I believe her background and education was discussed at trial. I don't have those transcripts with me. That's my recollection that when she testified at trial and Judge Martinez... I think we looked at that and we couldn't find anything even at trial. Then they're not... I could be wrong about that. Let me tell you the problem is she even kind of says she got it out of thin air herself. I mean she almost admits that and you got the insurance. The preponderance of the evidence is heavily the other way. I know it's clear error but there's like nothing for the government. I mean nothing at all. So the purpose of Melissa Kendrick's testimony was not as an expert in the valuation. That's obvious. It's obvious she's not an expert and knows nothing whatsoever about valuation. Correct. And she talked about she said that the insurance company applied fair market value test and is not coming up with its loss estimate. So I'd like to respond in two ways. First, I don't agree that... She understands willing buyer and willing seller in her testimony. Correct. And if I point you to page... She starts off as I read it going along with that standard which is a common place standard. I understand, Your Honor. And if I point you to page 13, the beginning of her testimony, question, what is the value that you estimated? The value is roughly $550,000. How did you arrive at that number? And then she discusses the valuation of the experts at Mel Fisher and valuing Mel Fisher's treasure. She explains how this object was given a value of points relative to the whole find. But she doesn't know how those points were established. I mean that's part of the problem. No, you're correct, Your Honor. It's hearsay and she did not have adequate foundation to establish that trial. She doesn't even have an understanding of them. You're correct. So how can we rely on that? How can the court rely on this points number that she has? We have no idea where it came from. We have no idea what her qualifications are. She has no idea where it came from. How can we rely on that as establishing fair market value? That seems problematic. Judge, what her testimony was, was that the people at Mel Fisher who are responsible for this gave her this information and that it was based on the fair market value as they determined it. But we don't know how they determined it. Your Honor, I agree. I don't see that at all counsel in the transcript. Let's go to page 26. Yes. Page 26 Yes. And the value is similar to what other gold bars of similar weight from the Atocha or Santa Margarita sold at auction? Yes. Those are the numbers that the insurance company came up with. So what she in effect said or agreed to, if the gold bar had been socked away in somebody's drawer, then the insurance company's valuation is correct. That's fair market value. But since it was not in a drawer and it was in a show place, all of a sudden it's five times worth, five times more, more than five times. Well, Judge, I think you just... Depends on whether you stash it away or put it in a showcase. Judge, I think... Isn't that what it boiled down to? Absolutely. I think you just hit the nail on the head. And so she just picked the number out of the air for the showcase versus having it in a secure place, like in a safety deposit box. If they had put it in a safety deposit box, then the insurance company's valuation is correct. Right. That's what she admits. Judge, first, I don't think she ever admits the insurance company valuation is correct. But isn't the insurance company valuation not just the fair market melt value? It would be, I guess, if you just stuck it in a security box, right? Plus a factor for it being an artifact, plus another factor for it having unique value above and beyond the fact that it's an artifact, because it's been in this museum for all of these years, and 30 million people have touched it, or however many. All of those things factor into the insurance value, right? I mean, that's what the record reflects. So, to your first point, the melt value, I think what the insurance company is saying is the bars that were stashed away in a drawer, those are the bars that went to auction, bars that have been stashed away in a drawer. Speaking colloquially, we don't know what happened to them, is the point Judge Martinez and Melissa Kendrick were making. That value is the melt value plus 45% of the bar value. For the artifact. And, Judge Hall asked previously where this was in the record, the insurance valuation. It was attached to a filing by defense counsel for the other defendant, but it was never introduced at the hearing. The only reason I point that out is, as defense counsel acknowledged for Mr. Johnson Sorry to interrupt, but wasn't it admitted to on cross-examination by Ms. Kendrick? I didn't believe it was offered and admitted. I believe it was referred to. She didn't agree that the insurance value consisted of whatever it was for the melt value. I think it was like $63,000 plus 45% for the artifact value plus 15% for it being unique. I think she agreed to the number the insurance company said when her recollection was refreshed, yes. But, my point is if you look at page 21 of the transcript. She said, conceded the insurance company paid the melt value of around $63,000 plus 45% of the bar's historic value plus another 15% for the bar's iconic value. I think it's in evidence. I was just curious to look at the document itself. She testified as to what the insurance company had done to come up with this valuation. Correct. My point, responding to Judge Rosenbaum, is that yes, the valuation that the insurance company reached is, but the document showing the values of other bars and how they reached it is what I'm referring to was attached to a memo but wasn't introduced. Why that's important is because when everyone in this case, the defense counsel, Ms. Kendrick, myself included, researched it and it's referenced in my sentencing memo as well as cross-examination of Ms. Kendrick. The bars we could find were selling for three to seven times what the insurance company claimed. This issue wasn't squarely presented in the district court. The insurance valuation, the methodology wasn't so squarely focused on. That might be fine. The $100,000 may be low, but the problem is, where is the evidence the government has to support the $565,000 or $566,000? That's the problem, right? Maybe if the district judge had determined the value based on the comparable bars or had gone a little over and said, well, I'm adding this because whatever. There's some kind of evidence that there should be an additional premium because of the unique value of this bar. That would be one thing, but we don't have that here. Isn't that a problem? I think the record is there as to that, but I do think that given the evidence that was before the district court, which was the museum's valuation of $556,000 with the extensive testimony of factors supporting why this bar would be worth many times over what the insurance company said, I think the district court's finding of $556,000 as to restitution merits deference. The counsel, you put her on to establish valuation. That's why she was testifying at the sentencing hearing and subject to cross-examination. Your Honor, I put her on for two purposes. One, to explain how she had arrived at the $556,000 claim initially submitted and two, to explain why this bar, even if the insurance company was correct that $100,000 would be some other bar's value of similar providence, this bar, having been the centerpiece exhibit of the world's most famous treasure hunter's museum and having been handled by millions of people, would merit a lot more value. I understand that, but she was testifying before the judge under oath for the purpose of determining valuation. Yes, I agree with that. Okay. I have a question about the record. Your opposing counsel says if we look at exhibit 86-3, I understand it may have been in the co-defendant's part of the case, but that we will find the insurance company claim. Is that incorrect? I think we can use that because they were kind of treated together. Are you saying that's not in the record either? What I'm saying, Judge, is that exhibit 86-3 is a pleading. That's not something that was admitted in court. That was something proffered in a sentencing memorandum. Again, I'm not saying that the district court could not have considered it, but what the district court did here was said, look, for bars . . . What do you mean it's in a pleading? I don't understand what you're saying. It's a sentencing memorandum. Is there a document attached to the sentencing memorandum? Yes. Okay. Let's not be cute here. The exhibit, the insurance company proof of loss claim or whatever it is, is attached to that pleading? Correct. And that was filed? That was filed. And did the government ever object to the district court considering that document? I don't think so. Well, Judge, the procedure would be for them to offer it into evidence at the sentencing, at which point we would . . . Let me switch to another document. At trial, there was an exhibit 15, which is identified on the trial exhibit list as art insurance from John . . . Was that exhibit introduced at trial, exhibit 15? That was introduced at trial for the purpose of establishing the statutory element that the bar was worth more than $10,000. Okay. And what does that document show? Does that show what the insurance company paid? Yes, it does. Yes. Okay. So exhibit 15 was introduced at trial. The clerk says exhibit 15 was returned to defense counsel. I can't find it in the record. So the trial exhibit 15. I just need y'all to get together and give us a copy of whatever exhibit 15 since the government admits it was introduced. Right? So whatever that is . . . I don't have the . . . I don't know what it looks like, but I . . . No, no. Judge, I will tell you that the insurance company valuation was almost certainly introduced at trial. Okay. Well, then that's . . . you can use that for sentencing. So I don't understand why you're saying we don't know what the insurance company did. 63 plus .45 plus 15 or whatever. No, no. I . . . Again, I must have misspoke. I'm not saying we don't know what the insurance company did. What I said was Judge Martinez was not presented with that document at sentencing as, Judge, look at this methodology. This is the right way to do it. You just said it was in a sentencing memorandum, too. And then you said, but that's not evidence. Then we have it as evidence in the trial. I'm confused. I'm referring to the sentencing hearing. Counsel, the whole purpose of a pre-sentence report, the addendum and sentencing memoranda, is it . . . it's like in a civil case. You're framing the case for sentencing purposes. So the . . . district judges . . . that's what the model is of district judges to consider those things. I understand, yes. In the light of the sentencing hearing. I understand. I think we got it. So, just turning to the Keene finding issue, I think the Keene finding here was as clear as any case in which the Court has encountered a Keene finding. Judge Martinez clearly said he would impose the same sentence. The only other factor that I would point to that Your Honors didn't point to on questioning a defense counsel was the destruction of the gold bar. That's a factor that's not anywhere accounted for in the guidelines. And Judge Martinez, in rejecting the defense's request for a downward variance, specifically said that's a bad crime. This is at page 6-7 of Mr. Goldman's transcript. They resulted in the destruction of an artifact that is priceless. I really believe it is priceless. That's the problem. So I think the destruction alone would merit a seven-month upward variance, and that's clearly a factor that was well-established through the testimony. But he didn't articulate it in terms of upward variance is the problem. Well, Judge, I don't think that's the problem. No, no, no. What I mean is if there was a lower sentencing range because of an erroneous evaluation, then the sentence became a variance. You're correct. And if you say I'm going to do the same sentence, then you would expect the district judge to articulate what the law requires in order to pose a variance. At least the government should have said, Your Honor, you've got to make an explanation. Judge, I understand your point. I think it would be cleaner if we had that, but in my research, the cases in which this case has, in this court, has dealt with Keene findings exactly this way. The district court articulates the sentence, articulates the basis why, and at the end says I would impose the same sentence anyway for the reasons. But usually in discussing the purposes of sentencing, it becomes clear. Judge, I... Let's put it this way. Either that or the defendant doesn't object. I understand what you're saying, Your Honor, but I believe that what Judge Martinez did here was make clear that the guidelines didn't adequately encapsulate the harm, and that's why he imposed the Keene finding. I see I'm out of time. Thank you, Your Honor. Thank you. Mr. McDaniel. Thank you, Your Honor. A few quick points. To answer one of your questions, Judge Hull, I believe that Exhibit 15 was an exhibit introduced at trial, a stipulation, where we agreed, and one of the elements of the offense was that the item had to be worth more than $100,000. And so in that stipulation, which we can certainly get to the court if it is not the insurance claim, I don't need to see it. Okay. Yes, Your Honor. It's just a stipulation the value's worth. Okay. Worth in excess of $100,000. Okay. That explains why it's not there. Thank you. Yes, Your Honor. So, to turn to one of the points that was being discussed earlier, and I think this is an important point to make here. The government bears the burden of proving fair market value in the sentencing hearing, and we learned in the record that the government had been talking with the witness, Ms. Kendrick, and they looked at other gold bars that were sold. And they said, so, question. This is during cross-examination of Kendrick. In preparation for this hearing, during direct examination, you provided me with some other gold bars that had been sold. Some of them were on the same size as this bar, and they sold for much less than $556,000. How do you explain that? Kendrick says, well, a couple of ways. You've got willing buyers and willing sellers. Fair market value. And those bars are shipwrecked bars being sold at auction. So the government had, did look at similarly sold bars, and yet chose not to introduce any of that evidence. They could have put together a spreadsheet of what those bars were worth, and it sounds like since they were of comparable size, the reason they might have sold for more than the $100,000 is that the gold bar, and once your honors find the Mel Fisher, I mean the insurance company valuation, you'll see the chart of the five comparable gold bars in there. The insurance company only used the latter three gold bars. I think this is in the briefing. This chart is definitely in the briefing. But if you'll take a look, it has the three components that you noticed, Judge Rosenbaum. They took the three gold bars sold most recently in time. I believe they excluded the first two because they were sold in 07, 08, probably in deteriorated market conditions given the nation's financial crisis at that time. But the government did look and had Ms. Kendrick pull similarly sold gold bars and chose not to introduce any of the evidence of what those might have been worth at auction. Instead, the only evidence that they used to try to meet their preponderance was hearsay evidence from a witness who didn't know anything about this point system. The point system, what we do know about it, and you'll also see in the insurance memo, one of the first lines of the insurance memo is, we've asked you to provide additional information about the point methodology. You have not done so. We asked you to provide additional information on how the point methodology is used in relation to fair market value. You have not done so. We've done our own analysis. Here are three separate gold bars that we've looked at that were sold. As Your Honor mentioned, Judge Rosenbaum, they looked at the melt value of the gold bar given the price of gold at the time of the sale at auction, looked at the difference between what it sold for at auction, determined that that was the historical value between its pure price of gold and why someone would possibly be willing to pay more than the sheer price of gold. That showed the historical value of it. And then they went ahead and added an additional 15% premium because of the iconic value given how important it was to the museum. As Your Honor mentioned, it was the centerpiece. So the question then becomes how much does this gold bar's centrality to the museum justify does that justify the valuation of over five times what the insurance company's valuation is that already baked in historical value as a second component and iconic value? I mean in fairness it could if there were some evidence that was reasonable to support it. The problem here is that there is no evidence other than this sort of vague statement that well, we assigned 8,128 points or whatever it was and each point has a value of this so the total value is 556. I mean, there's nothing else. That is the exact crux of the problem. Absolutely, Your Honor. And we don't know anything about A, how the points were assigned and B, who might have told Ms. Kendrick that there's a current fair market valuation of them, what that might be based upon. Had they introduced a spreadsheet similar to the insurance companies that came from the Fisher Museum explaining the points, that could have been a sufficient basis for the judge to value the bar at 556,000. But as Your Honor pointed out, it's not there in the record. The government didn't meet their burden here and the judge did not have a sufficient basis in the record to find the value of 556 and for that reason, the sentence should be vacated and the restitution amount similarly should be vacated. Thank you. Thank you, Jamba. United States v. Bezos.